DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after a jury found defendant-appellant, Shawn McDermott, guilty of one count of complicity in the trafficking of drugs, one count of complicity in the possession of drugs and one count of complicity in the possession of criminal tools. The jury also found that the amount of the drug, cocaine, did exceed 1,000 grams. From that judgment, appellant now raises the following assignments of error:
 {¶ 2} "Assignment of Error No. 1
 {¶ 3} "Trial counsel was ineffective and prejudiced the defendant by indicating that state had met fifty-one percent of their burden when the grand jury indicted the defendant.
 {¶ 4} "Assignment of Error No. 2
 {¶ 5} "Appellant's convictions are against the manifest weight and sufficiency of the evidence when the state presents an `illusion of guilt' as opposed to proof beyond a reasonable doubt on each individual count of the indictment.
 {¶ 6} "Assignment of Error No. 3
 {¶ 7} "The trial court erred by not granting the appellant's motion to suppress the search of the house and not granting standing to move to suppress the contents of the automobile driven by a `co-defendant.'
 {¶ 8} "Assignment of Error No. 4
 {¶ 9} "The court erred by sentencing the appellant as a major drug offender.
 {¶ 10} "Assignment of Error No. 5
 {¶ 11} "The trial court erred by not giving jury instructions indicating that mere association and mere acquiessence [sic] with the principal offender is not enough, that the accused must take a role in causing the commission of the offense."
 {¶ 12} On July 26, 2002, appellant was indicted and charged with trafficking in drugs, possession of drugs and possession of criminal tools. The trafficking and possession of drugs counts included specifications that appellant was a major drug offender. In addition, Gilberto Moldonado, Julieta Rodriguez, Jesus Padilla-Montano and Antonia Herdandez-Cruz were also charged in the indictment. The charges were the result of an investigation into possible drug trafficking at 569 Woodville Road, in Toledo, Lucas County, Ohio.
 {¶ 13} Prior to July 15, 2002, officers of the Toledo Metro Drug Task Force and the Toledo Police Department received information from the FBI that Moldonado was a suspect in a drug trafficking investigation in Detroit, that he might be the subject of a federal grand jury subpoena as part of that investigation and that he was then living at 569 Woodville Road, in Toledo. Based on the information they received, the officers believed that Moldonado was using the Toledo house as a stash house and to break down loads of cocaine. On or about July 1, 2002, officers began intermittent surveillance of the house. The officers then received information from an informant that Moldonado had been at the house approximately one week before July 15, 2002, where the informant observed a large number of kilos of cocaine.
 {¶ 14} In the early morning hours of July 15, 2002, officers of the drug task force conducted a garbage pull at 569 Woodville Road, in which they removed garbage that had been placed at the curb and searched it. In searching that garbage, officers discovered a kilo wrapper with cocaine residue on it and a bottle of Inositol. Inositol is a dietary supplement that is regularly used by drug dealers to cut down cocaine to a less pure form in order to prepare if for street-level sales. In addition, the number "135" was written on the kilo wrapper. Detective Sean Jones testified that a kilo wrapper could contain about $21,270 worth of cocaine. The officers continued to surveil the home. At approximately 8:00 a.m., the officers witnessed a white male take two garbage bags out of the house and place them on the curb for collection just as the garbage truck arrived. The officers testified that the white male, who was subsequently identified as appellant, appeared to be "trash conscious," which the officers described as looking both ways before walking to the garbage truck.
 {¶ 15} As the officers continued their surveillance of the house, they saw a white Dodge Intrepid with Michigan license plates pull into the driveway and park at the rear of the house. The officers were only able to observe the activity at the house from approximately four houses away, but from that distance they saw what appeared to be people putting bags into the trunk. Approximately 45 minutes later the Intrepid left the house. Officers then followed the car and, although they did observe the Intrepid commit a traffic violation, they pulled the car over for an investigation of drug trafficking . When Detective Jones approached the passenger's side open window of the car, he detected a very strong odor of cocaine. Officers then looked into the back seat compartment of the car and noticed a white opaque bag with a tied top bulging from its contents. The bag contained rectangular shaped bundles that could be seen through the sides of the bag, and through the top of the bag officers could see that the bundles were wrapped in green cellophane plastic. Officer Lou Vasquez testified that the bundles appeared to be a large sum of money, which he and the other officers suspected were the proceeds from drug trafficking. Officers then took the driver of the car, Jesus Padilla-Montano, and the front seat passenger, Antonia Hernandez-Cruz, into custody. It was ultimately determined that the cash found in the car totaled $278,990.
 {¶ 16} Officer Duane Poole testified that based on the evidence obtained from the garbage pull, he requested a search warrant for the 569 Woodville Road property. The affidavit also included information learned from the search of the Intrepid. When the warrant was returned, officers executed a search of the home and cars on the property. Initially, when the officers entered the home, they found appellant asleep on the living room couch. They removed him from the couch and placed him on the floor. They also seized Gilberto Moldonado and Julieta Rodriguez. It is noteworthy that the living room was quite small, approximately 12 feet by 12 feet. Several items of evidence were found in the immediate vicinity of appellant. Approximately four feet from appellant was a shoe box that contained $9,510 in cash; green cellophane plastic, identical to the plastic that bound the bundles of cash found in the Intrepid, was found in plain view about two to three feet from appellant; and a bag full of hundreds of rubber bands was found on the floor with the cellophane. The bag of rubber bands had fallen to the floor and some of the rubber bands had spilled onto the floor. Detective Kathy Brewer testified that the money found in the Intrepid was wrapped in rubber bands first and then wrapped in the green cellophane plastic. On the window sill in the living room, about three feet from appellant, officers found a ball of aluminum foil that contained a chunk of powder cocaine. Finally, Detective Jones found a ledger in the living room, but he could not be certain how far the ledger was from appellant. The ledger contained the adding and subtracting of large sums. In particular, the ledger contained the sum of $21,750, which Detective Jones stated was very close to the going rate for a kilogram of cocaine.
 {¶ 17} Upon searching the house, officers found two kilograms of cocaine under the basement stairs, a rerock machine in the basement, and a gallon of acetone near the rerock machine. A rerock machine is a homemade device used to reform cocaine once it has been diluted with additives. The machine reshapes the cocaine into brick form so that a drug trafficker can resell what appears to be an original kilogram of cocaine but which is in actuality a diluted product. Acetone is used in the rerock process. Detective Lou Vasquez testified that once the two kilos of cocaine were cut and distributed on the street, they were worth close to $200,000 per kilo. Officers further testified that the house was scantily furnished and there was no refrigerator in the kitchen. The kitchen did contain a microwave oven and a scale, which both contained cocaine residue. In addition to the house, officers searched two cars that were in the driveway of 569 Woodville Road. A 1995 Chevy pick-up truck registered to appellant contained a number of documents including: a receipt from Gillman, an auto mechanics shop, in Edna, Texas, listing appellant's name and showing that $283.47 cash was paid for repairs to a 1996 Chevy Tahoe on June 20, 2002; a Texas certificate of title for the 1995 Chevy pick up truck showing that title was transferred to appellant on June 24, 2002; an invoice for the truck showing that the price of the truck was $5,400 and that it was paid for in cash; a receipt from Complete Car Care All Tune and Lube in Louisville, Kentucky, for repairs to a 1995 Chevy pickup in appellant's name and dated July 1, 2002; and an Enterprise Rent-A-Car agreement from a rental company in Louisville, Kentucky, dated June 27, 2002, made out to Gilberto Moldonado and listing appellant as an additional driver. The Enterprise contract states that the car is to be returned by June 28, 2002. It also states that the mileage on the car when it was taken was 36,253 and that when it was returned was 37,071. Accordingly, appellant and Maldonado put approximately 800 miles on the car during the short time that they had it.
 {¶ 18} Based on the evidence presented at the trial below, the jury convicted appellant of complicity in the trafficking of drugs in violation of R.C. 2923.03(A)(2) and R.C. 2925.03(A) and (C)(4)(g), a first degree felony; complicity in the possession of drugs in violation of R.C 2923.03(A)(2) and R.C. 2925.11(A) and (C)(4)(f), a first degree felony; and complicity in the possession of criminal tools in violation of R.C. 2923.03(A)(2) and R.C. 2923.24(A) and (C), a fifth degree felony. The jury also found that the amount of the drugs possessed and sold exceeded 1,000 grams and that the criminal tool possessed was used in the commission of a felony. Appellant was sentenced to 10 years incarceration for complicity in the trafficking of drugs, 10 years incarceration for complicity in the possession of drugs, and 11 months incarceration for complicity in the possession of criminal tools, all sentences to run concurrently. In addition, the court found appellant guilty of the major drug offender specification. It is from his convictions and sentences that appellant now appeals.
 {¶ 19} We will first address appellant's third assignment of error, in which he challenges the trial court's denial of his motion to suppress the evidence obtained in the search of 569 Woodville Road and asserts that the court erred in not granting him standing to move to suppress the contents of the Intrepid.
 {¶ 20} With regard to appellant's first argument, it is well-settled that it is the appellant's burden to ensure that all necessary parts of the record are transmitted for appeal. App.R. 9(B). When an appellant omits parts of the record that are necessary to determine an assignment of error, we have no choice but to presume the validity of the proceedings below and affirm the judgment of the trial court. Natl. CityBank v. Beyer (2000), 89 Ohio St.3d 152, 160. In order to resolve whether the trial court erred in denying appellant's motion to suppress evidence obtained in the search of 569 Woodville Road, we would need the transcript of the hearing on that motion, which from the docket appears to have occurred on March 7 and 10, 2003. Although appellant's praecipe requested that the clerk include a complete transcript of the proceedings below, it only listed the trial proceedings under the section of the praecipe that states: "List here the dates of all hearings and/or trials to be transcribed." Furthermore, on July 2, 2003, the clerk notified counsel in the case that the record had been filed. It then listed the dates of the proceedings that had been transcribed and filed with the record. This list does not include the hearing of March 7 and 10, 2003. We therefore must presume the validity of the proceedings below and affirm the trial court's denial of appellant's motion to suppress.
 {¶ 21} As to the issue of appellant's standing to challenge the stop of the Intrepid, appellant asserts that because he was a codefendant of the driver and passenger in the Intrepid, he had standing to challenge the legality of that stop. In the proceedings below, however, appellant did not raise that issue. Rather, in his October 25, 2002 memorandum in response to the state's memorandum objecting to standing, appellant argued:
 {¶ 22} "Mr. McDermott accepts the general proposition that one must have a reasonable expectation of privacy in the place or thing searched in order to complain about that search. And he concedes that he does not directly have such an expectation of privacy in the Padilla-Montano/Cruz-Hernandez vehicle. In fact and accordingly, his objection is not to the unconstitutional seizure and search of the vehicle itself but, rather, to the use of the evidence obtained during that search in obtaining the search warrant for 569 Woodville Road."
 {¶ 23} Moreover, at the hearing on the motion to suppress the fruits of the search of the Intrepid, the court stated: "I think basically the parties are in agreement that the only defendants withstanding [sic] to object to the search of the automobile are Ms. Montano and Hernandez." Appellant's trial counsel agreed that the court had properly summarized the parties' in-chambers discussions which took place prior to the hearing. Accordingly, appellant has waived the right to challenge this issue on appeal. The third assignment of error is not well-taken.
 {¶ 24} In his second assignment of error, appellant asserts that his convictions were against the manifest weight of the evidence and were not supported by sufficient evidence.
 {¶ 25} The phrase "sufficiency of the evidence" raises a question of law as to whether the evidence is legally adequate to support a jury verdict as to all the elements of a crime. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Under this standard of adequacy, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Under a manifest weight standard, the court must sit as the "thirteenth juror" analyzing the entire record to deduce the relative weight of credible evidence. Thompkins, supra at 387. However, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The conviction should be reversed, and a new trial ordered, only in those "`exceptional case[s] in which the evidence weighs heavily against the conviction.'" Thompkins, supra at 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. Thus, a conviction will only be overturned under the manifest weight standard when "`the jury clearly lost its way and created * * * a manifest miscarriage of justice.'" Id., quoting Martin, supra at 175.
 {¶ 26} Appellant was convicted of complicity in the commission of three drug related offenses: trafficking in drugs, possession of drugs, and possession of criminal tools. R.C. 2923.03(A)(2), the complicity statute, provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." Paragraph (F) of that statute then provides that "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principle offender."
 {¶ 27} R.C. 2925.03 proscribes trafficking in drugs and reads in relevant part:
 {¶ 28} "(A) No person shall knowingly do any of the following:
 {¶ 29} "(1) Sell or offer to sell a controlled substance;
 {¶ 30} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 31} Where the drug involved is cocaine that is not crack cocaine and the amount involved equals or exceeds one thousand grams, "trafficking in cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree[.]" R.C. 2925.03(C)(4)(g).
 {¶ 32} Possession of drugs is proscribed by R.C. 2925.11, which reads at paragraph (A): "No person shall knowingly obtain, possess, or use a controlled substance." Where the drug involved is cocaine that is not crack cocaine and the amount involved equals or exceeds 1,000 grams, "possession of cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree[.]"
 {¶ 33} Finally, R.C. 2923.24 proscribes possessing criminal tools and provides under paragraph (A): "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Paragraph (C) then reads in relevant part: "If the circumstances indicate that the substance, devise, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree."
 {¶ 34} In addition to the evidence set forth above, Julieta Rodriguez and Jesus Padilla-Montano testified at the trial below. Both had been co-defendants of appellant and both signed plea bargain agreements with the state. Rodriguez was Gilberto Moldonado's girlfriend when the 569 Woodville Road house was searched. She was at the house at that time and was arrested along with appellant and Moldonado. July 15, 2002, the day of the search, was a Monday. Rodriguez testified that appellant had been at the house the entire weekend, that he was very upset because his brother had just been killed, and that during that time she saw him ingest something into his nose, although she could not be sure what it was. Padilla-Montano was the driver of the Intrepid. He testified that on July 14, 2002, he was in Detroit when he received a telephone call from Moldonado. Moldonado asked him to drive down to Toledo to pick up some money. When he arrived the next morning, appellant was asleep in a chair in the living room. Padilla-Montano stated that he had seen appellant with Moldonado before at social functions. Appellant woke up, said "hello" and went back to sleep. Padilla-Montano and Moldonado then went into the kitchen to find a plastic bag for the cash. The cash was already wrapped in green plastic. Padilla-Montano testified that the money came from the sale of drugs and that he had previously bought about nine ounces of cocaine from Moldonado every 15 days. He further testified that his car, the Intrepid, had a hidden compartment that he was going to use to transport the money. Padilla-Montano admitted that with regard to this case, he was convicted of trafficking in drugs and possession of criminal tools and that in exchange for his testimony the state would recommend a five year prison sentence. On cross-examination, Padilla-Montano stated that neither appellant nor Rodriguez were in the kitchen when Moldonado gave him the money and that appellant was never involved in his previous drug deals with Moldonado.
 {¶ 35} Based on the evidence submitted below and in consideration of the statutes sited above, we cannot say that appellant's convictions were against the manifest weight of the evidence or unsupported by sufficient evidence. In State v. Johnson (2001), 93 Ohio St.3d 240, syllabus, the Supreme Court of Ohio held: "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." The house at 569 Woodville Road was scantily furnished and contained nothing but evidence of drug trafficking. Officers testified that with regard to the $278,990, it took three to four individuals five to six hours to hand count the cash. Although no scientific evidence linked appellant to the items found in the house, the rubber bands and cellophane used to bundle the cash and a ledger of apparent drug transactions were found in plain view within a few feet of appellant. Moreover, the rerock machine (the criminal tool) was found in plain view in the basement and two kilograms of cocaine were found on a shelf under the basement stairs. This, combined with evidence that appellant removed trash from the house just as the garbage truck arrived and was "trash conscious" about that removal, could lead a reasonable jury to conclude that appellant at the very least cooperated with Moldonado in the commission of the crimes and shared his criminal intent.
 {¶ 36} The second assignment of error is therefore not well-taken.
 {¶ 37} In his fifth assignment of error, appellant asserts that in charging the jury on complicity, the court erred in refusing to instruct that mere association with the principal offender is not sufficient to establish aiding and abetting.
 {¶ 38} During the proceedings below, appellant's counsel requested the following special instruction with regard to complicity: "To `aid and abet' is `to assist or facilitate the commission of a crime, or to promote its accomplishment. Further, to support a conviction for complicity by aiding and abetting pursuant to Revised Code2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised or incited the principal in the commission of a crime, and that the defendant shared the criminal intent of the principal. * * * An aider and abettor is one who assists another in the accomplishment of common design or purpose; he must be aware of and consent to such design or purpose." Appellant's request for this instruction was based on the Supreme Court of Ohio's decision inJohnson, supra.
 {¶ 39} In addition, appellant's trial counsel requested that the court instruct the jury that "Mere association with the principal is not enough," and "The mere presence at the `scene of the crime' is not sufficient to prove, in and of itself, that the accused was an aider and abettor."
 {¶ 40} The court initially denied appellant's requested instruction. Subsequently, however, the court reconsidered its decision and stated to counsel: "I originally had the O.J.I. language on the definition of aid and abet. However, I substituted the language from [the] case of State of Ohio versus Johnson. * * * I added the language that — from the Supreme Court decision to the effect that the mere presence of an accused at the scene is not sufficient to prove in and of itself that he was an aider and abettor, so that language is now in the instruction." Appellant's trial counsel then thanked the court for changing the instruction.
 {¶ 41} During the proceedings below, the court then instructed the jury in pertinent part as follows. With regard to the offense of complicity in drug trafficking, the court charged:
 {¶ 42} "Now, a person who purposely aids or abets another in the commission of trafficking in drugs is regarded as if he were the principal offender and is just as guilty as if he personally performed every act constituting the offense. When two or more persons have a common purpose to commit a crime and one does one part and a second performs another, those acting together are equally guilty of the crime. * * * Aided or abetted means to assist or facilitate the commission of a crime or to promote its accomplishment. The mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor."
 {¶ 43} Crim.R. 30 provides that a party may not assign as error the failure of the trial court to give certain jury instructions where he failed to object thereto. See, also, State v. Graven (1978),54 Ohio St.2d 114, 116. The failure to give certain jury instructions, however, may be reviewable by the appellate court if it rises to the level of plain error as defined by Crim.R. 52. State v. Faulkner (1978),56 Ohio St.2d 42, 47.
 {¶ 44} The court below instructed the jury as appellant had requested and consistent with the law as set forth in Johnson. Appellant did not object to that instruction and we see no plain error in that charge. The fifth assignment of error is not well-taken.
 {¶ 45} In his first assignment of error, appellant asserts that he was denied the effective assistance of counsel at the trial below because of comments that counsel made to the jury during his opening statement.
 {¶ 46} The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v.Washington (1984), 466 U.S. 668, 686-687. In essence, appellant must show that his trial, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693.
 {¶ 47} Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id. at 689. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner. State v. Hamblin (1988), 37 Ohio St.3d 153, 155-56. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Phillips (1995),74 Ohio St.3d 72, 85. Even if the wisdom of an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 48-49. Finally, reviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners. Strickland, supra at 689; State v.Keenan (1998), 81 Ohio St.3d 133, 152.
 {¶ 48} Appellant asserts that his trial counsel was ineffective when, during voir dire, he told the jury that the burden of proof in the grand jury was just 51 percent and that: "Again, the fact that the Grand Jury only has to listen to — only has to find 51 percent and that nobody challenges the State's case in the Grand Jury is the way that he can be here and you can still find him not guilty, because you're going to be the only ones who hear it all. Is everybody clear on that?" Appellant contends that by making these statements, his trial counsel made an incorrect statement of the law and conceded that the state had already met 51 percent of its burden.
 {¶ 49} Appellant's trial counsel, however, made this statement as part of his explanation to the jury of the presumption of innocence. Immediately preceding the above quoted statement, appellant's trial counsel stated: "So is anybody going to give any weight to the fact that Shawn McDermott has been indicted? Hopefully not. Okay. Shawn McDermott is presumed innocent. You've heard that said already this morning a couple of times. Presumed innocent. Okay. So you say to yourselves, okay, if he's presumed innocent, then how come he got indicted in the first place? Well, we've already talked about that, but if he's presumed innocent, how come he's sitting over there next to me with a deputy sitting behind him? They don't pick these names out of phone books in that Grand Jury."
 {¶ 50} Whether or not counsel's comment regarding the state's burden at the grand jury was an incorrect statement of the law, counsel clearly informed the jury that appellant was presumed innocent. Moreover, we are convinced that any prejudice appellant may have suffered from counsel's statement was cured when the trial court instructed the jury on several occasions that appellant was presumed innocent and that the burden was on the state to prove him guilty beyond a reasonable doubt.
 {¶ 51} Appellant further asserts that his trial counsel was ineffective for trying to negotiate a plea bargain with the state despite appellant's protestations of innocence and for failing to draw the jury's attention to alleged inconsistencies in the testimony of some witnesses. These are clearly matters of trial strategy that fail to rise to the level of ineffective assistance. The first assignment of error is therefore not well-taken.
 {¶ 52} Finally, in his fourth assignment of error, appellant asserts that the trial court erred in sentencing him as a major drug offender. Appellant submits that such a sentence enhancement without subjecting the question to the jury violated his Sixth Amendment right to a trial by jury and resulted in the unconstitutional extension of his incarceration beyond the statutory maximum.
 {¶ 53} The argument appellant advances was considered and rejected by this court in State v. Graves, 6th Dist. No. L-02-1053, 2003-Ohio-2359, in which, citing State v. Elkins, 148 Ohio App.3d 370, 2002-Ohio-2914, at ¶ 20, we held that a major drug offender specification under R.C2941.1410 is expressly dependent on a jury finding that the amount of the drug possessed or sold by a defendant was in excess of the amount specified in R.C. 2929.01(X), in excess of 1,000 grams of cocaine in this case. In the present case the record is clear. The lower court did in fact submit the question of whether appellant was a major drug offender to the jury when it asked the jury to determine whether the amount of drugs appellant was complicit in possessing and selling exceeded 1,000 grams. The jury answered this question in the affirmative. Accordingly, the trial court did not err in sentencing appellant as a major drug offender and the fourth assignment of error is not well-taken.
 {¶ 54} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal pursuant to App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., George M. Glasser, J., concur.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.