OPINION
{¶ 1} Antonio E. Elijah was found guilty by a jury in the Montgomery County Court of Common Pleas of two counts of rape, each with a firearm specification. On each count, he was sentenced to a ten year term of imprisonment, plus three years of actual incarceration for the firearm specification. The court ordered the sentences to be served consecutively. Elijah appeals.
 {¶ 2} Elijah was indicted separately for the rapes of three different victims, and the indictments were referred to as Indictments A, B, and C. Indictment B was severed, and the offenses charged in Indictments A and C proceeded to trial together on March 28 through April 1, 2005.
 {¶ 3} Under Indictment A, Elijah was charged with the rape of A.C., aggravated robbery, and two firearm specifications. . A.C. testified that, on June 21, 2001, she and a female friend had been leaving Banana Joe's in downtown Dayton when they encountered "Eric," who was very friendly and asked them for a ride to Milano's Pizza on North Main. At trial, the women identified "Eric" as Elijah. They agreed to give him a ride and, while Elijah was in the car, he asked to use A.C.'s cellular phone. When they arrived at Milano's, Elijah was still using the phone, exited the car with it, and walked into the restaurant. He did not return, and when A.C. entered the restaurant, Elijah was no longer there. A short time later, A.C. and her friend saw Elijah walking down Main Street toward Milano's. A.C. got out of the car and yelled to Elijah that she wanted her phone back, whereupon he crossed to the far side of the street. A.C. followed, and as she caught up to him, he grabbed her arm and led her into the neighborhood through alleys and backyards while talking with her. Elijah began to warn A.C. of the danger of the neighborhood and told her not to run or scream because bad things would happen to her. He told her that he had a gun and made her feel it in his back pocket. When they eventually reached a park, Elijah asked A.C. to touch his penis, but she refused. He then raped her. Elijah took A.C.'s rings and a small amount of money. They put their pants back on and again began to walk through the neighborhood. When they encountered another person, Elijah acted as if A.C. was his girlfriend. She eventually ran away from him, although she had no idea where she was. She spotted Grandview Hospital and ran there, where she was subsequently examined and a rape kit was completed. The DNA from A.C.'s rape kit was later linked to Elijah.
 {¶ 4} Under Indictment C, Elijah was charged with the rape of C.S., kidnapping, aggravated robbery, and three firearm specifications. According to C.S., a homeless woman with Crohn's Disease and other health problems, on September 5, 2002, she was walking with her boyfriend to a homeless shelter where she hoped to spend the night. They were approached by "JJ," whom C.S. later identified as Elijah. Elijah was very friendly and, when he learned of C.S.'s situation, he said that he knew of an apartment where she could stay for $75 a week. Elijah, C.S., and her boyfriend walked around the neighborhood near Grandview Hospital for several hours. C.S. did not know where she was. Elijah then informed them that he needed to take care of something, that C.S. could come with him but the boyfriend could not, and that they would be back in five minutes. Elijah became very mean after he and C.S. left the boyfriend, told C.S. that he had a gun, and alluded to his involvement with a gang that would kill her boyfriend if she did not do what he wanted. They continued walking and ended up in someone's backyard, where Elijah raped C.S. on a picnic table. He threatened that there were people in the house with guns on her that would shoot her or her boyfriend if she screamed. He also put a razor to her neck. After the rape, they wandered around the neighborhood a bit longer. Eventually, C.S. spotted some security guards and ran to them. Initially, Elijah approached the guards as well, claiming that C.S. was his girlfriend and acting as if they were having a domestic dispute. He fled before the police arrived. C.S. was examined at Grandview Hospital, and a rape kit was completed. The DNA from C.S.'s rape kit was linked to Elijah.
 {¶ 5} Elijah testified at trial that the sex with both women had been consensual. He testified that he and A.C. had gone to the park to smoke crack cocaine because A.C. was trying to hide her drug use from her friend. He stated that A.C. had thought he looked like "Tupac," a rapper, and had initiated the sexual encounter. He denied having a gun or taking any property from her. With respect to C.S., he claimed that she had been willing to exchange sex for drugs and that they had had consensual sex at a hotel.
 {¶ 6} The jury found Elijah guilty of the two counts of rape, each with a firearm specification, and acquitted him of the other charges. He was sentenced to two ten-year terms of imprisonment on the rapes, along with three year terms of actual incarceration on the firearm specifications.
 {¶ 7} Elijah raises six assignments of error on appeal.
 {¶ 8} I. "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO SEVER THE A AND C PORTIONS OF THE INDICTMENT FOR TRIAL, THEREBY DEPRIVING APPELLANT OF A FAIR TRIAL."
 {¶ 9} Elijah claims that the two alleged rapes should not have been tried together because the similarities were insufficient and the evidence of one would not have been admissible in the other case if they had been tried separately. He asserts that the differences in the crimes outnumber the similarities, and he points out that the offenses were separated by a significant period of time. The state claims that Elijah waived his motion for severance by failing to renew it at the close of the state's case or at the conclusion of all of the evidence, and it asserts that Elijah agreed to have the cases tried together. The state also claims that the offenses were properly tried together because the similarities in the incidents demonstrated Elijah's modus operandi.
 {¶ 10} The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character. State v. Lott (1990), 51 Ohio St.3d 160,163, 555 N.E.2d 293, 297; State v. Torres (1981),66 Ohio St.2d 340, 343, 421 N.E.2d 1288, 1290. When a defendant claims that the court erred in refusing to allow separate trials of multiple charges, he has the burden of affirmatively showing that his rights were prejudiced. Torres, 66 Ohio St.2d at 343. When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. State v. Schaim (1992), 65 Ohio St.3d 51,59, 600 N.E.2d 661. A trial court's decision denying severance will only be reversed if the trial court abused its discretion.Lott, 51 Ohio St.3d at 163.
 {¶ 11} The state correctly points out that a Crim.R. 14 motion for severance due to prejudicial misjoinder is waived unless it is renewed at the close of the state's case or at the conclusion of all the evidence. State v. Strobel (1988),51 Ohio App.3d 31, 33, 554 N.E.2d 916. Moreover, at a hearing on March 18, 2005, Elijah did seem to agree to having the indictments tried together.
 {¶ 12} Even if we assume, for the sake of argument, that Elijah preserved his right to appeal from the trial court's refusal to sever, we agree with the trial court's conclusion that
 {¶ 13} Elijah was not prejudiced by the joinder. The supreme court has stated that "other acts" are admissible to show modus operandi, which in turn is relevant to the issue of identity under Evid.R. 404(B). State v. Lowe (1994), 69 Ohio St.3d 527,531, 634 N.E.2d 616. At the time the court ruled on the motion to sever, it was unknown whether Elijah would testify or that he would admit to engaging in sexual conduct with A.C. and C.S. Thus, other acts testimony would have been admissible — had the indictments been tried separately — to demonstrate modus operandi and to prove identity.
 {¶ 14} The evidence in the two cases evinced a pattern of conduct: in each case, Elijah was alleged to have initiated interaction with the victim under false pretenses, deceived the victim so as to separate her from a companion in an area with which she was unfamiliar, led her around the area for a while so as to further disorient her, encouraged her to believe that she was in imminent danger in that particular neighborhood if she did not do as he said, and then raped her in an outdoor but somewhat isolated area. After each attack, Elijah pretended to be the victim's boyfriend when they encountered other people. These similarities were sufficient to support the trial court's conclusion that the evidence of one crime would have been admissible at the trial of the other even if the counts were severed.
 {¶ 15} Alternatively, we are satisfied that the evidence of each crime was simple and distinct so that Elijah was not — for this additional reason — prejudiced by the joinder of the indictments. Lott, 51 Ohio St.3d at 163.
 {¶ 16} The first assignment of error is overruled.
 {¶ 17} II. "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO APPOINT NEW COUNSEL FOR APPELLANT AND CONTINUING HIS TRIAL THEREBY DEPRIVING APPELLANT OF EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL."
 {¶ 18} Elijah contends that he should have been afforded new counsel because of a breakdown in communication and cooperation with his appointed counsel.
 {¶ 19} At the hearing on his request for a new attorney, which was held the morning of trial, Elijah complained that his attorney had not considered the witnesses that he wanted to call and had wasted time pursuing the possibility of a plea bargain after he had made it clear that he was not interested in a plea. He claimed that his counsel was unprepared for these reasons.
 {¶ 20} Counsel asserted that Elijah had previously suggested only two witnesses to her and that both of these witnesses had been on the state's witness list. She stated that her strategy had been to cross-examine these witnesses rather than to subpoena them herself. With respect to some of the witnesses mentioned to her for the first time at the hearing, such as his parole officers, the attorney stated that she did not consider those to be character witnesses and that she did not think they should put character forward in the defense. She also said that, in her legal opinion, character evidence would be appropriate only if Elijah was going to testify, and she stated that Elijah had expressed doubt about testifying. Counsel indicated that she did not feel prepared to proceed to trial in light of the fact that Elijah had refused to communicate with her over the preceding weekend, but that she had prepared as best she could.
 {¶ 21} The trial court noted that this was the second time that Elijah had requested a different attorney, and it reminded him that, when the first attorney was replaced, the court had informed Elijah that only very compelling reasons would justify any further changes. The court then found that Elijah was requesting a new attorney for purposes of delay and that he had deliberately waited until the last minute to provide witness information to his attorney. The court also found Elijah's claim that he had presented his witness list to his attorney earlier, but she had refused to consider the list, to be untruthful.
 {¶ 22} The trial court correctly observed that it was within the court's discretion to determine whether a genuine problem existed requiring the substitution of counsel. "[A] defendant may discharge a court-appointed attorney when the defendant can demonstrate a break-down in the attorney-client relationship to such a degree as to endanger the defendant's right to effective assistance of counsel. Specifically, an indigent defendant is entitled to the appointment of new counsel when there is a showing of good cause, such as a conflict of interest where the conflict is so severe that the denial of substitute counsel would violate the Sixth Amendment right to counsel. Alternatively, the defendant may demonstrate a complete breakdown of communication or an irreconcilable conflict which leads to an unjust result." (Citations omitted.) State v. Adair, Montgomery App. Nos. 20606, 20607, 20608, 2005-Ohio-2858, ¶ 4. The trial court acted within its discretion in concluding that Elijah's problems with his attorney were fabricated and did not justify replacing counsel on the day of trial.
 {¶ 23} The second assignment of error is overruled.
 {¶ 24} III. "THE TRIAL COURT ERRED IN FAILING TO GIVE A LIMITING INSTRUCTION TO THE JURY TO DISREGARD IF THEY HAD SEEN APPELLANT IN HANDCUFFS."
 {¶ 25} Elijah claims that some jurors may have seen him in handcuffs in the courthouse hallway and therefore may have been biased against him. A deputy told the court that some people were standing at the other end of the hallway when Elijah was brought into the courthouse, but he did not know whether they had been prospective jurors. The deputy also indicated that he had tried to stand between Elijah and those individuals to shield their view. In response, the court indicated that it would give a limiting instruction to the jurors, but it did not do so.
 {¶ 26} Although a defendant should be tried while shackled only in unusual circumstances, we agree with the view taken by several state and federal circuit courts that the danger of prejudice to defendants is slight where a juror observes a defendant in custody only briefly, inadvertently, and outside of the courtroom. See, e.g., State v. Kidder (1987),32 Ohio St.3d 279, 285-286, 513 N.E.2d 311; State v. Powers (1995),106 Ohio App.3d 696, 700, 667 N.E.2d 32; United States v. Robinson
(C.A.8, 1981), 645 F.2d 616, 617; United States v. Taylor
(C.A.2, 1977), 562 F.2d 1345, 1359. Here, it is not clear that the observers in question were jurors or potential jurors or that they saw Elijah in handcuffs. As such, Elijah has failed to demonstrate prejudice. Moreover, Elijah did not object to the omission of the limiting instruction. Under these circumstances, we cannot conclude that Elijah was prejudiced.
 {¶ 27} The third assignment of error is overruled.
 {¶ 28} IV. "APPELLANT WAS DENIED HIS RIGHT TO COMPULSORY PROCESS TO COMPEL THE ATTENDANCE OF WITNESSES BY HIS COUNSEL AND THE COURT."
 {¶ 29} Elijah claims that his right to compel witnesses to testify on his behalf was violated by the trial court's failure to permit him to call two witnesses, Jim Connell and Detective William Lawson.
 {¶ 30} As background to the dispute over these witnesses, we reiterate that Elijah had requested new counsel on the eve of trial, in part because of his counsel's alleged failure to subpoena the witnesses that he wanted. The trial court found that Elijah had deliberately waited until the last minute to provide witness information to his attorney as a delay tactic. The court did, however, instruct defense counsel to attempt to subpoena Elijah's witnesses while the state was presenting its case in chief, noting that the testimony of these witnesses would still have to comply with the evidentiary rules. As such, we note that the trial was under way when Elijah's witnesses were subpoenaed, for reasons that the trial court attributed to Elijah's own actions.
 {¶ 31} Jim Connell was a Montgomery County prosecutor who, at some point in the past, had allegedly refused to approve charges against Elijah related to the rape of A.C. Elijah indicates that Connell "may have had knowledge not contained in the police reports that indicated defects in the prosecution's case." At the outset, the trial court expressed strong skepticism about the relevance of this testimony. But the court seems to have indicated that a subpoena could be issued, with the understanding that it might be quashed if Elijah was unable to establish relevance. The record does not establish that a subpoena was ever issued for Connell.
 {¶ 32} The state suggests that any error in failing to subpoena Connell was harmless in light of the trial court's skepticism about the relevance of Connell's testimony. We agree. It is not clear what evidence was before Connell when he made his decision not to bring charges against Elijah, although it is apparent that DNA evidence had not yet been obtained. Connell's assessment of whether a particular body of evidence at a different point in time was sufficient to bring charges against Elijah had no bearing on the issues before the jury.
 {¶ 33} Elijah also sought to have Detective William Lawson testify on his behalf. Lawson investigated A.C.'s rape. An initial attempt to subpoena Lawson was unsuccessful because he had retired from the police department, and then he was out of town during part of the trial. The trial court refused to continue the trial so that Lawson could attend. Elijah claimed that Lawson's testimony would have been relevant "to understand the nature of the investigation he conducted" and to show an inconsistency in A.C.'s testimony about whether she had been "pushed" or "guided" to the ground prior to the rape. The trial court found that the alleged inconsistency was minor, that the difficulty in obtaining the evidence was driven by the defendant's delay tactics, and that the attorney would not have chosen to subpoena Lawson but for Elijah's insistence. Again, we find no fault with the trial court's decision. The value of the testimony was minimal, and Elijah was responsible, at least in part, for the logistical problems with bringing Lawson to court.
 {¶ 34} The fourth assignment of error is overruled.
 {¶ 35} V. "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 36} Elijah claims that his attorney was ineffective because she continued to pursue the possibility of a plea bargain even after he had indicated his determination to go to trial. He asserts that she would have been more prepared for trial if she had spent this time focusing on the names of witnesses that he gave her. He also claims that she was ineffective in failing to question A.C. about an alleged inconsistency between her statement to the police and her trial testimony regarding whether she had been "pushed" to the ground.
 {¶ 37} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Strickland v. Washington (1984), 466 U.S. 668, 688,104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that counsel's errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different.Strickland, 466 U.S. at 688.
 {¶ 38} Elijah's alleged efforts to deter his attorney from pursuing a plea bargain are not contained in the record. As a general rule, however, the pursuit of plea negotiations does not constitute ineffective assistance, even if the defendant is not inclined to accept a plea. See State v. McDermott, Lucas App. No. L-03-1110, 2005-Ohio-2095, ¶ 51. Insofar as Elijah claims that his attorney's plea negotiations detracted from her ability to explore the value of the witnesses that he wanted to call, we note that the trial court found Elijah's testimony about his efforts to provide such names to his attorney lacking in credibility. Specifically, the trial court rejected Elijah's claim that he had attempted to provide counsel with the witness list earlier. Instead, the court concluded that he had used the witness list as an instrument of delay by springing it on his attorney at the last minute and then refusing to speak with her. In light of this finding, we reject Elijah's argument that counsel was ineffective for failing to pursue these witnesses prior to trial.
 {¶ 39} Elijah also claims that counsel was ineffective in failing to challenge A.C.'s assertion that Elijah had "pushed" her to the ground. He suggests that this characterization was stronger than the description contained in the police report. The state claims that this was a matter of trial strategy, with counsel opting to avoid the risk of highlighting the force used to accomplish the rape. We agree with the state's position. Elijah claimed that sex with A.C. was consensual, while she claimed that it was not. Counsel could have reasonably decided that focusing on the degree of force alleged by the victim was not in Elijah's best interests. Moreover, we are unpersuaded that making this point would have affected the outcome of the trial.
 {¶ 40} The fifth assignment of error is overruled.
 {¶ 41} VI. "THE APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE BIAS AND PREJUDICE OF THE TRIAL COURT."
 {¶ 42} Elijah asserts that the trial court "harbored an animus against him" that deprived him of a fair trial. He cites the court's failure to admonish the prosecutor for an obscene reference to the defendant outside the presence of the jury, its refusal to allow the removal of his handcuffs during a hearing outside the presence of the jury, and its imposition of the maximum sentence for rape even though the victims were not tortured, maimed, or otherwise treated badly as compared to other rapes.
 {¶ 43} At the end of the hearing at which Elijah's first attorney was replaced because Elijah had filed a grievance against him, the prosecutor referred to Elijah as a "fucking punk." This comment was made outside the presence of any jurors, and it appears from the record that the prosecutor may have initially believed that he was off the record. After defense counsel questioned whether they were still on the record, the prosecutor stated that he would nonetheless "stand by that comment." Although this comment was inappropriate, considering the circumstances, we find no evidence of bias in the trial court's failure to admonish the prosecutor. Similarly, we find no impropriety in the trial court's refusal to permit the removal of Elijah's handcuffs for a brief hearing at which the jury was not present.
 {¶ 44} In imposing the maximum sentence, the trial court gave substantial weight to the fact that Elijah picked victims who he knew to be vulnerable so that he "could easily isolate, overpower, and rape" them. The court also noted his "long, diverse history of engaging in a criminal lifestyle" and his use of a gun in the offenses. There is ample support for these factors in the record, and the trial court did not abuse its discretion in determining that they were entitled to significant weight. The trial court did not abuse its discretion in imposing the maximum sentence.[1]
 {¶ 45} The sixth assignment of error is overruled.
 {¶ 46} The judgment of the trial court will be affirmed.
Brogan, J. and Fain, J., concur.
[1] We note that the court imposed its sentence based on factors set forth in R.C. 2929.14(C), which related to the imposition of maximum sentences, and R.C. 2929.14(E)(4), which related to the imposition of consecutive sentences. Elijah did not appeal from the use of these criteria. Pursuant to the supreme court's recent holding in State v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856, however, both of these sections have been held unconstitutional, and the trial court now has full discretion to impose a prison sentence within the statutory range. Id.; State v. Mathis, ___ Ohio St.3d ___, 2006-Ohio-855, ¶ 37.