OPINION
{¶ 1} Laquan Montgomery appeals from his conviction and sentence on multiple charges including theft of a motor vehicle, aggravated robbery, receiving stolen property, possession of criminal tools, kidnapping, having a weapon while under disability, and *Page 2 
engaging in a pattern of corrupt activity.
 {¶ 2} Montgomery advances four assignments of error on appeal. First, he asserts that his indictment was fatally defective because it omitted the mens rea element for aggravated robbery, kidnapping, and engaging in a pattern of corrupt activity. Second, he claims the trial court erred by failing to sever certain charges for separate trials. Third, he contends the State presented legally insufficient evidence to support some of his convictions. Fourth, he maintains that the trial court erred in convicting him of kidnapping and aggravated robbery. Montgomery asserts that these crimes were allied offenses of similar import.
 {¶ 3} The charges against Montgomery stemmed from three criminal episodes. The first involved the theft of a blue Pontiac Bonneville on June 29, 2006. Montgomery's mother drove him to a Dayton-area residence to see the Bonneville, which was being sold by its owner. Montgomery took the car for a test drive and never returned. Approximately one month later, police found the Bonneville parked behind a fence at the home Montgomery shared with his mother.
 {¶ 4} The second incident involved the armed robbery of a Rally's fast-food restaurant on July 23, 2006. Employee Christopher Buckner was standing in front of the restaurant waiting for the manager, Wendy Mitchell, to set an alarm so they could leave. A cab driven by Sharon Booghier-Odeh was waiting to take them home. Two armed men wearing bandanas suddenly approached on foot. One of the men took Booghier-Odeh's money and a cell phone belonging to the cab company. The other man escorted Mitchell into the restaurant's office, tore out the telephone, and emptied a safe. The victims then watched as the two robbers fled in a blue pickup truck driven by a third *Page 3 
person. Booghier-Odeh later identified co-defendant Terance Sheppard as the man who had robbed her. Following his arrest approximately one week later, Montgomery admitted to police that he had been paid $300 for serving as the get-away driver. During their investigation, police discovered the cell phone that had been taken from Booghier-Odeh in the back of the stolen Pontiac Bonneville found at Montgomery's house.
 {¶ 5} The third incident involved the armed robbery of a Food Time Market on July 31, 2006. Around 7:30 a.m., Dorris Hoover awoke to find that his beige Chevy Lumina van had been stolen. The same morning, Montgomery's mother watched her son leave home with Sheppard and another person in a van matching the description of Hoover's vehicle. Around 9:00 a.m., Food Time Market employee David Brennan stepped outside the business to retrieve newspapers from a lock-box. He noticed a goldish colored Chevy Lumina van in the parking lot. Two men with bandanas over their mouths exited the van and ran toward Brennan. One of the men put a gun to his back and forced him into the market and onto the floor in a back room. Once inside, one of the men pointed a gun at owner Majed Sawaged, told him it was a robbery, and took money from the cash register and lottery drawer. The man then forced Sawaged into the back office and took money from a safe. On the way out, the two robbers took cigarettes and cigars. Sawaged followed the men out of the store and got a partial license plate number from the van. Sawaged also saw Montgomery pacing outside the store before getting into the driver's side of the van and fleeing after the robbers entered the passenger's side. Sawaged later identified Sheppard as one of the two robbers.
 {¶ 6} Shortly after the Food Time Market robbery, Dayton police officer Creigee Coleman saw a van matching the description of the get-away vehicle and coming from *Page 4 
the direction of the store. Following a police chase, the van crashed into a pole. The three occupants fled with officers in pursuit. While waiting at the crash site, Dayton police officer Dan Mamula saw Montgomery riding a child's bicycle. Montgomery approached and purported to tell officers which direction the suspects had fled. Mamula noticed that he was sweaty, out of breath, nervous, and hesitant in answering questions. Montgomery also could not tell Mamula his home address. Mamula found a screwdriver, gloves, and a flashlight in Montgomery's possession. Police later recovered Montgomery's fingerprint on the exterior driver's side door of the stolen van.
 {¶ 7} While being interviewed about the Food Time Market robbery, Montgomery initially denied any involvement. He then admitted meeting up with members of the Greenwich Village Gang and participating in the Food Time Market robbery by serving as a look-out and driving the stolen van away from the scene.
 {¶ 8} A jury convicted Montgomery on one count of theft of a motor vehicle in connection with the stolen Pontiac Bonneville. The jury also convicted him on two counts of aggravated robbery, one count of kidnapping, one count of having weapons while under disability, one count of possession of criminal tools, and applicable firearm specifications for his role in the Rally's robbery. The jury additionally convicted Montgomery on one count of aggravated robbery, two counts of kidnapping, two counts of possession of criminal tools, receiving stolen property, having weapons while under disability, and applicable firearm specifications for his role in the Food Time Market robbery. Finally, the jury found him guilty on one count of engaging in a pattern of corrupt activity. The trial court imposed an aggregate sentence of fifteen years in prison. This timely appeal followed. *Page 5 
 {¶ 9} In his first assignment of error, Montgomery raises an argument under State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, asserting that his indictment improperly omitted the mens rea element for aggravated robbery, kidnapping, and engaging in a pattern of corrupt activity. Although he did not raise this issue below, Montgomery citesColon for the proposition that it may be raised for the first time on appeal.
 {¶ 10} Upon review, we find no merit in Montgomery's argument. While we do not dispute his reading of Colon, we find no violation of the rule articulated in that case. Even setting aside the Ohio Supreme Court's recent emphasis that the syllabus of Colon is limited to its facts, [1]
Montgomery's indictment did not violate Colon by failing to charge a mens rea element. In Colon, the Ohio Supreme Court considered an indictment for the crime of robbery in violation of R.C. 2911.02(A)(2), which prohibits inflicting, attempting to inflict, or threatening to inflict physical harm while attempting, committing, or fleeing from a theft offense. The Colon court found the robbery indictment defective because a violation of R.C. 2911.02(A)(2) is not a strict liability offense, and the indictment failed to allege a mental state of recklessness.
 {¶ 11} In the present case, Montgomery was charged with three counts of aggravated robbery in violation of R.C. 2911.01(A)(1), which generally prohibits displaying or using a deadly weapon during the commission of a theft offense or in fleeing from such an offense. We have held that Colon does not apply to an indictment charging the deadly-weapon form of aggravated robbery in violation of *Page 6 
R.C. 2911.01(A)(1). State v. Smith, Montgomery App. Nos. 21463 and 22334,2008-Ohio-6330, ¶ 72-73 (citing with approval cases from other appellate districts for the same proposition). Based on Smith, we conclude that Montgomery's aggravated robbery indictment did not violateColon.
 {¶ 12} We reach the same conclusion with regard to the kidnapping charges against Montgomery. His indictment charged him with kidnapping in violation of R.C. 2905.01(A)(2). In reviewing R.C. 2905.01(A), we have held that "the mens rea of the statute is purpose." State v.Carver, Montgomery App. No. 21328, 2008-Ohio-4631, ¶ 145. The statute prohibits removing or restraining another person with the purpose to do one of several specified things. In the present case, the indictment alleged removal or restraint "for the purpose of facilitating the commission of a felony, or flight thereafter" in violation of R.C. 2905.01(A)(2). Because the indictment included the requisite mental state, it did not violate Colon.
 {¶ 13} Finally, we conclude that the charge against Montgomery for engaging in a pattern of corrupt activity did not violateColon. Engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) is a strict-liability offense, and the accused's mental state is irrelevant. State v. Schlosser, 79 Ohio St.3d 329, 335,1998-Ohio-716. Therefore, the omission of a culpable mental state from the corrupt-activity count in the indictment was not error. Montgomery's first assignment of error is overruled.
 {¶ 14} In his second assignment of error, Montgomery claims the trial court erred by failing to sever certain charges for separate trials. Specifically, he contends the trial court should have conducted three trials: one for the theft of the Pontiac Bonneville, one for the charges involving the Rally's robbery, and one for the charges involving the Food *Page 7 
Time Market robbery. The trial court denied Montgomery's pre-trial Crim. R. 14 motion for severance without explanation.
 {¶ 15} On appeal, Montgomery cites our opinion in State v.Clements (1994), 98 Ohio App.3d 797, for the proposition that severance must be granted when crimes occur on different dates and at different locations, requiring the presentation of separate evidence. Although we found that the trial court had erred in refusing to order separate trials in Clements, we did not purport to set forth a per se rule regarding when charges must be tried separately. The need for severance depends on a defendant's affirmative showing of prejudice as a result of joinder of charges, and resolution of the issue is within a trial court's discretion. State v. Broadnax, Montgomery App. No. 21844, 2007-Ohio-6584, ¶ 37.
 {¶ 16} The State also properly notes that "`[a] motion for severance of counts due to prejudicial misjoinder is waived unless it is renewed at the close of the state's case or at the conclusion of the evidence.'"State v. Bates, Clark App. No. 2005 CA 83, 2006-Ohio-4146, ¶ 33, quotingState v. Rutledge (June 1, 2001), Montgomery App. No. 18462; see alsoState v. Elijah, Montgomery App. No. 21085, 2006-Ohio-2635, ¶ 11;State v. Sapp, Clark App. No. 99 CA 84, 2002-Ohio-6863, ¶ 64, affirmed,105 Ohio St.3d 104, 2004-Ohio-7008; State v. Reddish (Oct. 15, 1999), Montgomery App. No. 17323; State v. West (Oct. 18, 1996), Clark App. No. 94 CA 26; State v. Mays (April 22, 1981), Greene App. No. 1143. The State additionally points out that, with exceptions not applicable here, a motion for severance must be filed no later than thirty-five days after arraignment or seven days before trial, whichever is earlier. See Crim. R. 12(D).
 {¶ 17} In the present case, Montgomery moved for severance before trial but *Page 8 
never renewed his motion. Therefore, he has forfeited his ability to raise the issue on appeal. Montgomery also filed his motion to sever more than four months after his second arraignment. As a result, the motion was tardy under Crim. R. 12(D). While the rule allows a trial court to enlarge the filing time in the interest of justice, Montgomery did not even attempt to explain why the interest of justice required his untimeliness to be excused. His motion was subject to denial for these two reasons.
 {¶ 18} Finally, we find no plain error in the trial court's failure to sever the charges. The trial court did not err in trying the counts involving the Rally's and Food Time Market robberies together. The record supports a finding that they were of a similar character and were part of a common scheme or course of criminal conduct. See Crim. R. 8(A). In fact, presenting evidence about both the Rally's and Food Time Market robberies was necessary to convict Montgomery of engaging in a pattern of corrupt activity. Under R.C. 2923.31(E), a "pattern of corrupt activity" requires evidence of "two or more incidents of corrupt activity[.]" The trial court also reasonably joined the charge concerning the theft of the Pontiac Bonneville because the evidence pertaining to it was "simple and direct, such that the trier of fact could segregate the proof on the multiple charges. "Broadnax, supra, at ¶ 38. Accordingly, Montgomery's second assignment of error is overruled.
 {¶ 19} In his third assignment of error, Montgomery contends the State presented legally insufficient evidence to support some of his convictions. In particular, he challenges the sufficiency of the evidence to support his conviction for any offenses associated with the Rally's robbery. He further challenges the sufficiency of the evidence to support his convictions for possession of criminal tools based on a screwdriver being found in his pocket and receiving stolen property based on receiving, retaining, or *Page 9 
disposing of the Chevy Lumina van. Finally, he challenges the sufficiency of the evidence to support his conviction for engaging in a pattern of corrupt activity.
 {¶ 20} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v.Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 21} With the foregoing standards in mind, we conclude that the challenged convictions are based on legally sufficient evidence. With regard to the Rally's incident, Montgomery was convicted as an accomplice in the aggravated robbery of cab driver Booghier-Odeh and restaurant manager Mitchell. He also was convicted as an accomplice in the kidnapping of Mitchell and possession of criminal tools based on the presence of bandanas worn by the robbers to help conceal their identities. Montgomery contends these convictions were based on insufficient evidence because no one identified him as being present at the Rally's and no physical evidence suggested he was there. Finally, he argues that a police detective misconstrued a post-arrest statement he made as an admission that he was present. These arguments lack merit.
 {¶ 22} At trial, police detective Kent Saunders testified that the cell phone taken *Page 10 
from Booghier-Odeh during the robbery later was discovered in the stolen Pontiac Bonneville found behind a fence at Montgomery's house. In addition, Saunders unambiguously testified that Montgomery admitted having been the get-away driver in the Rally's robbery and having received $300 for his participation. This evidence alone is legally sufficient to support Montgomery's convictions for his role in the Rally's robbery. {¶ 23} We reach the same conclusion with regard to Montgomery's conviction for possession of criminal tools based on a screwdriver being found in his pocket. Montgomery contends the State presented legally insufficient evidence to prove that the screwdriver in his possession had been used to "peel" the van's steering column. At trial, officer Mamula testified that he encountered Montgomery on site where the van crashed following a police pursuit. Montgomery posed as a witness to the incident and purported to tell Mamula which direction the perpetrators had fled. While speaking to Montgomery, Mamula began to suspect that he may have been involved in the Food Time Market robbery that preceded the police chase. As a result, he decided to conduct a pat down. He then immediately saw a screwdriver in Montgomery's back pocket "with the tip side sticking up." Mamula also observed that the van's steering column had been "peeled." This led him to believe the van had been stolen. Mamula explained that a criminal easily can take a screwdriver and peel a column by removing the surrounding soft metal. The screwdriver then can be used to push a lever and start a stolen vehicle. In addition to this testimony, the State presented evidence that one of Montgomery's fingerprints was found on the driver's side door of the van, and he admitted to police that he had been the get-away driver. The foregoing evidence was legally sufficient to support Montgomery's conviction under R.C. 2923.24(A), which required proof that he *Page 11 
possessed a device or instrument with the purpose to use it criminally.
 {¶ 24} We also reject Montgomery's contention that the State failed to present legally sufficient evidence to support his conviction for receiving stolen property based on receiving, retaining, or disposing of the Chevy Lumina van. Montgomery's sole argument on the issue is that his indictment incorrectly identified the van as belonging to Food Time Market rather than Dorris Hoover. This error in the indictment does not require reversal of Montgomery's conviction. The statute at issue, R.C. 2913.51(A), provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense." Montgomery cites no authority for the proposition that the correct identity of the owner of the property is an element of the offense. In any event, the trial court instructed the jury that in order for Montgomery to be found guilty, it had to find that he "did receive, retain or dispose of property, to-wit: a motor vehicle, being a 1993 Chevrolet Lumina van, being the personal property of Dorris Hoover * * *." The trial court was permitted to amend the indictment at any time to correct a defect or variance with the evidence provided no change was made in the name or identity of the offense charged. Crim. R. 7(D). In essence, that is what the trial court did when it instructed the jury that the van was owned by Hoover, a fact supported by the State's evidence. As a result, Montgomery properly was convicted of receiving stolen property.
 {¶ 25} Finally, the State presented legally sufficient evidence to support Montgomery's conviction for engaging in a pattern of corrupt activity. The statute at issue, R.C. 2923.32(A)(1), provides: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the *Page 12 
enterprise through a pattern of corrupt activity[.]" R.C. 2923.32(A)(1). An "enterprise" includes any individual, association, or group of persons associated in fact. R.C. 2923.31(C). "Corrupt activity" includes aggravated robbery. R.C. 2923.31(I)(2)(a). A "pattern of corrupt activity" requires "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E).
 {¶ 26} In the present case, the State presented evidence that Montgomery participated in both the Rally's and Food Time Market robberies with a co-defendant named Terance Sheppard and others who were members of a group known as the Greenwich Village Gang. In fact, Montgomery confessed to police that he had participated in the Rally's and Food Time Market robberies by serving as the get-away driver for members of the gang. Additionally, police officer William Elzholz testified that he was familiar with the Greenwich Village Gang. He described it as "basically an organized crime [group] doing robberies." The foregoing evidence was legally sufficient for the jury to find that Montgomery was associated with an enterprise and that he participated in the affairs of the enterprise through a pattern of corrupt activity. Accordingly, the third assignment of error is overruled.
 {¶ 27} In his fourth assignment of error, Montgomery contends the trial court erred in convicting him of kidnapping and aggravated robbery. He asserts that these crimes were allied offenses of similar import. Relying on State v. Winn, 173 Ohio App.3d 202, 2007-Ohio-4327, appeal allowed, 117 Ohio St.3d 1405, 2008-Ohio-565, he insists that he should have been convicted of only one of them. Montgomery did not raise this *Page 13 
argument below. Therefore, we are limited to plain-error review. "An error qualifies as `plain error' only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise."State v. Chappie, 175 Ohio App.3d 658, 662, 2008-Ohio-1157.
 {¶ 28} Montgomery's entire argument on appeal is as follows:
 {¶ 29} "Appellant's kidnapping convictions violate the Fifth Amendment of the United States Constitution and Section 10, Article I, of the Ohio Constitution. This Court held in State v. Winn (2007),173 Ohio App.3d 202, 877 N.E.2d 1020, that kidnapping and aggravated robbery are allied offenses of similar import and one can be convicted of and sentenced for only one of those crimes. Id. at 210. Appellant's convictions and sentence must be reversed."
 {¶ 30} The record reflects that Montgomery was convicted for aggravated robbery of the Food Time Market, the Rally's restaurant, and Booghier-Odeh, the cab driver. He also was convicted of kidnapping Brennan and Sawaged at the Food Time Market and Mitchell at the Rally's restaurant. Although the trial court imposed concurrent sentences for the aggravated robbery and kidnapping convictions, concurrent sentences do not preclude a finding of plain error where multiple convictions are improper. State v. Coffey, Miami App. No. 2006 CA 6, 2007-Ohio-21, ¶ 14. In any event, Montgomery has not shown plain error.
 {¶ 31} We did recognize in Winn that kidnapping and aggravated robbery are allied offenses of similar import. Winn, supra, at 209, citingState v. Logan (1979), 60 Ohio St.2d 126. This is so because when "`a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to *Page 14 
complete the robbery.'" Id., quoting Logan. The Ohio Supreme Court affirmed Winn on March 17, 2009. See State v. Winn, Slip Opinion No. 2009-Ohio-1059. Thus, Montgomery's argument is correct as far as it goes. But it does not go far enough to show plain error. The mere fact that two crimes are allied offenses of similar import does not preclude separate convictions and sentences. As we noted in Winn, separate convictions and sentences are allowed for allied offenses of similar import if each crime was committed with a separate animus. Id. On appeal, Montgomery does not even address whether the kidnappings and aggravated robberies were committed with a separate animus. Absent any argument on that point, we find no plain error. The fourth assignment of error is overruled.
 {¶ 32} Having overruled Montgomery's assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.
GRADY and WOLFF, JJ. concur.
(Hon. William H. Wolff, Jr., retired from the Second Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)
[1] See State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749. *Page 1